Bryan S. Arce, Esq.
PA ID No. 308174
Silvia C. Stanciu, Esq.
**Arcé Law Group, P.C.**
45 Broadway, Suite 430B
New York, NY 10006
(212) 248-0120

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
-------------------------------------------------------------------X   Case No. 2:22-cv-01994
ANTOINETTE HARRISON,

                Plaintiff,

     -against-    **COMPLAINT**

URBAN AFFAIRS COALITION GPUAC, individually
and d/b/a "PHILADELPHIA ANTI-DRUG/ANTI-
VIOLENCE NETWORK" and JOHN PHILLIPS,
individually,

                Defendants.
-------------------------------------------------------------------X

Plaintiff, ANTOINETTE HARRISON, by and through her attorneys, Arcé Law Group, P.C., complains of Defendants, upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, et seq., seeking damages to redress the injuries she has suffered as a result of being harassed and discriminated against by her employer on the basis of her sex, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, assault and battery, and wrongful termination.

1

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. 2000e et seq., 28 U.S.C. §1331, §1343, and supplemental jurisdiction thereto.

3. Venue is proper in this district based upon the fact that a substantial part of the events and omissions giving rise to the claim occurred within the Eastern District of Pennsylvania. 28 U.S.C. §1391(b).

4. On or about August 31, 2020, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

5. On or about March 31, 2022, Plaintiff received a Notice of Right to Sue Letter from the EEOC.

6. This action is brought within ninety (90) days of said Notice of Right to Sue Letter.

## PARTIES

7. Plaintiff is a female resident of the Commonwealth of Pennsylvania, County of Philadelphia.

8. At all times material, Defendant URBAN AFFAIRS COALITION GPUAC individually and d/b/a "PHILADELPHIA ANTI-DRUG/ANTI-VIOLENCE NETWORK" (hereinafter also referred to as "PAAN") was and is a domestic non-profit organization duly existing under the laws of the Commonwealth of Pennsylvania.

9. At all times material, Defendant PAAN was and is a community services organization which operates an office located at 2700 North 17th Street, Suite 200, Philadelphia, PA 19132.

10. At all times material, Defendant JOHN PHILLIPS (hereinafter also referred to as "PHILLIPS") was and is a male resident of the Commonwealth of Pennsylvania.

11. At all times material, Defendant PHILLIPS was and is working as a "Community Crisis Intervention Program Coordinator" at Defendant PAAN.

12. At all times material, Defendant PHILLIPS was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

13. Defendant PANN and Defendant PHILLIPS are hereinafter referred to as "Defendants."

14. At all times material, Plaintiff was an employee of Defendants.

## MATERIAL FACTS

15. In or around October 2019, Plaintiff learned about a job opening as a as a "Community Crises Intervention Program (CCIP) Advocate" with Defendant PAAN from "Re-Entry Employment Specialist" at Pennsylvania Career Link,[1] Wynter Jones.

16. Plaintiff submitted an application online, and she was invited to interview for the position later that same month.

17. In or around the end of October 2019, Plaintiff arrived at Defendants' 1207 Chestnut St, Philadelphia, PA 19107 location for her interview.

18. Plaintiff interviewed with Defendant PHILLIPS, who asked her several questions about her work experience. At the end of the interview, Defendant PHILLIPS offered Plaintiff the position, and she accepted. Then, as Plaintiff was leaving, Defendant PHILLIPS stated, "**I can't wait for you to come on board and so I can get to know you better**."

19. Defendant PHILLIPS hired Plaintiff because of her physical appearance and in order to try and pursue a sexual relationship with her, either at work or outside of the office.

20. On or about November 5, 2019, Plaintiff began working for Defendant PAAN as a "CCIP Advocate." In that role, Plaintiff served as an advocate for individuals at risk of engaging in violent behavior and was responsible for case management and community outreach.

---

[1] Pennsylvania Career Link is a state-run job program which connects businesses with individuals seeking employment.

21. Shortly after the beginning of her employment, Defendant PHILLIPS began to sexually harass Plaintiff at work, and make sexual charged comments about other women in the office.

22. Defendant PHILLIPS openly exploited his authoritative position over his female staff and regularly threatened to terminate the employment of any female that was unwilling to tolerate his incessant harassment.

23. For example, on one occasion, Plaintiff arrived at work and overheard Defendant PHILLIPS shout, "**I'll get rid of all these women! None of them want to fuck me**!"

24. Additionally, Defendant PHILLIPS routinely made comments about the physical appearance of Defendant PANN's female staff and openly **remarked on the size of their breasts.**

25. Shortly after, Defendant PHILLIPS' harassment escalated to unwanted physical touching.

26. In or around the end of December 2019, Plaintiff was at her desk when Defendant PHILLIPS called her into his office. **Defendant PHILLIPS then closed the door, grabbed Plaintiff's face, and tried to kiss her**. Plaintiff pushed him away and said, "Please don't touch me, stop it!" Defendant PHILLIPS callously replied, "**If you don't want to fuck me, you can get out of here!**" Plaintiff immediately left Defendant PHILLIPS' office.

27. Within minutes, Plaintiff complained to another "CCIP Coordinator," Samuel Smith, about Defendant PHILLIPS' sexually inappropriate conduct and comment. Mr. Smith simply ignored Plaintiff's complaint and continued carrying out his own duties.

28. Defendants knew about Defendant PHILLIPS' unlawful conduct and did nothing to remedy the harassment, prevent further harassment, or escalate Plaintiff's complaint to Defendant PAAN's "Human Resources ("HR") Department. As a result, Defendant PHILLIPS's harassment continued.

29. For example, on or about January 11, 2020, Plaintiff received an unexpected phone call on her cell from Defendant PHILLIPS. Defendant PHILLIPS initially began the conversation by discussing work matters, but quickly shifted the course of conversation to "test the waters" with Plaintiff and determine her interest in a sexual relationship.

30. Specifically, Defendant PHILLIPS told Plaintiff, "**I liked you ever since I interviewed you. You hide your body well and I want to see what it looks like without clothes.**" Plaintiff was uncomfortable and abruptly ended the conversation.

31. On or about January 25, 2020, Defendant PHILLIPS again telephoned Plaintiff and stated, "**Why don't you send me a picture wearing a thong.**" Plaintiff stated that she was in a committed relationship and asked Defendant PHILLIPS to stop calling her after work hours. Defendant PHILLIPS then shouted, "**I don't care! If you don't send me pictures and fuck me, you're going to be out of a job!**" Plaintiff again immediately ended the call.

32. Following this phone call, Plaintiff considered reporting Defendant PHILLIPS to the HR Department. However, based on Mr. Smith's prior failure to take remedial action, and Defendant PHILLIPS' brazen, and openly observable sexually inappropriate conduct, Plaintiff reasonably believed that doing so would be futile. Plaintiff also did not complain because she perceived Defendant PHILLIPS as violent and mentally unstable, and she feared for her safety. As a result, Defendant PHILLIPS' sexually harassing behavior again escalated.

33. For example, on or about February 17, 2020, Defendant PHILLIPS called Plaintiff into Defendant PAAN's downstairs office under the guise of needing help with paperwork.

34. Plaintiff was hesitant to meet Defendant PHILLIPS downstairs because she was afraid of being alone with him. However, Plaintiff did not want to upset her boss and she reluctantly went down to the basement. Immediately thereafter, **Defendant PHILLIPS pressed Plaintiff**

**against the wall, began touching her breasts, and attempted to kiss her**. Plaintiff pushed Defendant PHILLIPS away, ran back to her desk, and told coworkers Jerell Kelmsley and Shakira (last name currently unknown) about the incident.

35. Due to Defendant PHILLIPS' sexual assault, Plaintiff began to experience severe anxiety and unexpected panic attacks.

36. On or about February 24, 2020, approximately one (1) week later, Defendant PHILLIPS insisted that Plaintiff join him on a drive to complete a work errand. Based on the prior assault, Plaintiff did not want to be alone with Defendant PHILLIPS. Therefore, Plaintiff approached Mr. Smith and another "CCIP Coordinator," George Williams, and expressed her apprehension of working in close proximity to Defendant PHILLIPS, stating, "You know how I feel about [Defendant PHILLIPS]. I'm sorry, but I don't want to get in that car with him." Mr. Smith curtly replied, "**You can either get in the car or go home!**" Fearing termination, Plaintiff reluctantly agreed to accept the car ride with Defendant PHILLIPS.

37. True to form, as soon as Plaintiff entered the car, Defendant PHILLIPS resumed his sexually harassment, stating, "**You have no idea how bad I want to have sex with you**." Then, Defendant PHILLIPS **began brushing his hand against Plaintiff's inner thigh**. Plaintiff pushed Defendant PHILLIPS' hand away, stating, "**Cut it out already! Stop!**"

38. Frustrated by Plaintiff's unwillingness to reciprocate his advances, Defendant PHILLIPS became openly agitated and shouted, "**You know I'm getting sick and tired of you! You're friendly with all the other guys on the job. If you're not going to fuck me then you got to go!**" Plaintiff was afraid and remained silent for the remainder of their car ride.

39. Unnerved by Defendant PHILLIPS' relentless sexual harassment and touching, Plaintiff wanted to resign, but could not due to financial constraints. Therefore, Plaintiff told several

6

coworkers about Defendant PHILLIPS' sexual harassment, hoping they could help prevent and/or deter Defendant PHILLIPS from further sexual harassment and/or sexual assault.

40. Specifically, in or around the beginning of March 2020, Plaintiff told six of her coworkers, Jateara (last name currently unknown), Daija (last name currently unknown), Leroy Handy, Cory Wilken, Jerrell Kelsey, and Latisha Handsome about Defendant PHILLIPS' serial sexual harassment.  Ms. Handsome and Daija told Plaintiff that they had also been subjected to sexually inappropriate conduct by Defendant PHILLIPS.

41. Shortly after, Defendant PHILLIPS began to retaliate against Plaintiff for her refusal to give in to his sexual advances.

42. For example, on or about March 25, 2020, while Plaintiff was working "in the field" with her coworkers Jateara and Monica (last name currently unknown), Defendant PHILLIPS arrived at her work site unannounced.  Then, Defendant PHILLIPS reprimanded Plaintiff for allegedly failing to complete her field notes.  However, Defendant PHILLIPS never instructed Plaintiff to provide him with field notes.  In the presence of Plaintiff's coworkers, Defendant PHILLIPS shouted at Plaintiff, "Get the fuck in the car! Now!"  Plaintiff refused to enter Defendant PHILLIPS' vehicle.

43. Defendant PHILLIPS then telephoned the "Director of Anti-Violence Programs," George Williams, and asked that Plaintiff be disciplined and/or sent home for failing to follow his directives.

44. Unwilling to further endure Defendant PHILLIPS' harassment, Plaintiff gathered her belongings and returned to the office in Monica and Shatera's company vehicle.

45. After this incident, Plaintiff's coworkers became alarmed by Defendant PHILLIPS' erratic behavior and grew concerned for Plaintiff's safety.

46. Therefore, on or about April 28, 2020, Mr. Handy and Mr. Kelly told the "Director of Programs and Community Outreach," Keith Scott, about Defendant PHILLIPS' discriminatory and retaliatory conduct.

47. Later that day, Mr. Scott met with Plaintiff to discuss Mr. Handy and Mr. Kelly's allegations against Defendant PHILLIPS. An unknown female[2] also attended this meeting.

48. Mr. Scott then asked Plaintiff, "Do you have something to tell me? Is what [Mr. Handy and Mr. Kelly] telling me true?" Plaintiff confirmed that the allegations were true and stated that she feared retaliation for exposing Defendant PHILLIPS' unlawful conduct.

49. Plaintiff was reluctant to make a formal complaint of sexual harassment and retaliation in the unknown woman's presence and asked to speak to Mr. Scott privately. Mr. Scott obliged and arranged to meet with Plaintiff the following day to further discuss her complaints. Mr. Scott also told Plaintiff that he would escalate her complaints to Defendants' "Executive Director," George Mosee.

50. However, after the second meeting where Plaintiff reiterated Defendant PHILLIPS' sexual harassment and retaliation to Mr. Scott in private, Defendants ceased their purported investigation and did not take any remedial action against Defendant PHILLIPS.

51. Then, in further retaliation, Defendants began to strip Plaintiff of her job responsibilities by preventing Plaintiff from leaving the office or conducting any type of community outreach.

52. On or about May 6, 2020, Mr. Mosee called Plaintiff into his office and terminated her employment.

53. When Plaintiff asked why she was being terminated, Mr. Mosee cited an alleged argument between Plaintiff and a female coworker in or around the beginning of April 2020.

---

[2] Upon information and belief, this female is an employee of Defendants and was part of Defendants' purported investigation into the complaints of sexual harassment brought against Defendant PHILLIPS.

54. Defendants' stated reason for terminating Plaintiff is pretext.

55. Defendants terminated Plaintiff less than two (2) weeks after her April 28, 2020 complaint of sexual harassment against Defendant PHILLIPS.

56. Significantly, employees similarly situated to Plaintiff and who had not made complaints of sexual harassment were not terminated for being involved in similar workplace disputes.

57. The following day, Plaintiff telephoned Ms. Jones at "Pennsylvania Career Link" to complain about her unlawful termination. During their phone conversation, **Ms. Jones admitted to receiving other complaints of sexual harassment against Defendant PHILLIPS** and encouraged Plaintiff to file a formal complaint of discrimination with the Pennsylvania Human Relations Commission.

58. The above are just some of the examples of harassment and discrimination that Plaintiff had to endure while working for Defendants.

59. Defendants terminated Plaintiff in retaliation for her complaints of workplace harassment.

60. Defendants would not have harassed Plaintiff but for her sex.

61. Defendants would not have retaliated against Plaintiff but for her complaints of unlawful harassment on the basis of her sex, sexual harassment, and assault.

62. As a result of Defendants' actions, Plaintiff felt and continues to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered, and continues to suffer, severe emotional distress and physical ailments.

64. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary

losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

65. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages.

**AS A FIRST CAUSE OF ACTION
UNDER TITLE VII
<u>DISCRIMINATION</u>
(Against Defendant PAAN Only)**

66. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended, for relief based upon the unlawful employment practices of Defendant AHF.  Plaintiff complains of Defendant PAAN's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

68. Defendant PAAN engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff on the basis of her sex, together with creating a hostile work environment and wrongful termination.

**AS A SECOND CAUSE OF ACTION
UNDER TITLE VII
<u>RETALIATION</u>
(Against Defendant PAAN Only)**

69. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it

shall be an unlawful employment practice for an employer:

> "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

71. Defendant PAAN engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment, because of her opposition to its unlawful employment practices.

### AS A THIRD CAUSE OF ACTION
### UNDER PENNSYLVANIA STATE LAW
### DISCRIMINATION

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. The Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, §5(a) provides that it shall be an unlawful discriminatory practice: "For any employer because of the…race [or] sex…of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract…."

74. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her sex, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, assault and battery, and wrongful termination.

## AS A FOURTH CAUSE OF ACTION
## UNDER PENNSYLVANIA STATE LAW
## <u>RETALIATION</u>

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. The Pennsylvania Human Relations Act, 43 P.S. §§951-963, §5(d) provides that "It shall be an unlawful discriminatory practice…for any person, employer, employment agency, or labor organization to discriminate in any manner against any individual because such individual has opposed a practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

77. Defendants engaged in an unlawful employment practice prohibited by the Pennsylvania Human Relations Act, §5(d) by retaliating against the Plaintiff because of her opposition to Defendants' unlawful employment practices.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in an unlawful employment practice prohibited by Title VII and the Pennsylvania Human Relations Act on the basis of Plaintiff's sex, together with sexual harassment, *quid pro quo* sexual harassment, creating a hostile work environment, retaliation, and wrongful termination;

B. Awarding damages to the Plaintiff, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiff punitive damages;

E.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: May 20, 2022
      New York, NY

                           **Arcé Law Group, PLLC**
                           *Attorneys for Plaintiff*

By: */s/Bryan S. Arce, Esq.*
      Bryan S. Arce, Esq.
      PA ID No. 308174
      45 Broadway, Suite 430B
      New York, NY 10006
      P: (212) 248-0120
      F: (212) 901-2107